# United States District Court
### for the
### Western District of New York



| | |
|---|---|
| United States of America<br>v.<br><br>MICHAEL CENTANNI,<br><br>*Defendant* | Case No. 13-MJ-657 |

## CRIMINAL COMPLAINT

I, S.A. JASON SIUDA, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about November 26, 2013, in the Western District of New York, and elsewhere, the defendants violated **Title 21, United States Code, Sections 841 and 846**, offenses described as follows:

There is probable cause to believe that the defendant, MICHAEL CENTANNI, has violated Title 21, United States Code, Section §§ 841 and 846, to wit, conspiracy to possess with the intent to distribute methylone, a Schedule I controlled substance.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

JASON SIUDA,
Special Agent, ICE/DHS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 26, 2013

City and State: Rochester, New York

*Judge's signature*
HON. JONATHAN W. FELDMAN
U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF MONROE  )         ss:
CITY OF ROCHESTER  )

Jason Siuda, being duly sworn, deposes and states:

1.  I am a Special Agent with the United States Homeland Security Investigations (HSI), within the Department of Homeland Security ("DHS") since August, 2009. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801 et seq. During my law enforcement career, I have participated in investigations targeting the smuggling, trafficking, and distribution of narcotics. As part of my employment with HSI, I successfully completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the Immigration and Customs Enforcement Basic School, both of which included intensive instruction with regard to drug enforcement, including application for, and execution of, search and arrest warrants, as well as application for criminal complaints, and other legal process. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used within the framework of drug smuggling and how drug smugglers use other persons and/or their personal property to facilitate their illegal activities.

2. I have also received training and participated in numerous investigations involving the importation and distribution of "controlled substance analogues", sometimes referred to as "synthetic drugs". In this regard, I am aware that the Controlled Substances Act (CSA) was amended in 1986 by the enactment of the Controlled Substance Analogue Enforcement Act. The Controlled Substance Analogue Enforcement Act specifically provides that controlled substance analogues, to the extent that they are intended for human consumption, are to be treated as Schedule I controlled substances for the purposes of criminal prosecution. The term "controlled substance analogue" means a substance which: (1) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; (2) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or (3) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II. Title 21 United States Code 802(32)(A).

3. I am also aware that companies located in China and India, are principally responsible for manufacturing and exporting illicit chemical substances and analogs to the United States. Exporters of these compounds will typically mislabel the product to evade detection by customs or other law enforcement, and sell the drugs via the Internet to distributors around the world, including in the United States. Distributors in the United States then sell the

drugs online, through traditional distribution methods or by retail distribution at convenience stores, gas stations, and "head shops". Analogue substances can be highly dangerous chemicals that are ingested by recreational drug users as a substitute to other, more familiar, controlled substances such as marijuana, MDMA (ecstasy), cocaine, ketamine, PCP, and methamphetamine.

4. In October 2011, the United States Drug Enforcement Administration (DEA) exercised its emergency scheduling authority to control three analogue substances which were found to be similar in chemical structure to Cathinone, a Schedule I stimulant. This list included 4 methylmethcathinone a/k/a "Mephedrone"; 3,4 methylenedioxypyrovalerone a/k/a "MDPV"; and, 3,4 methylenedioxymethylcathinone a/k/a "Methylone". These substances have been marketed under names such as "Ivory Wave", "Purple Wave", "Drone", "Vanilla Sky", "Amped", "Rave", "M-1", "Molly" or "Bliss". Except as authorized by law, the emergency action made the possession and distribution of these chemicals, or the products that contain them, illegal in the United States. See, 18 C.F.R. 1308.11(g).

5. On July 9, 2012, President Obama signed into law S. 3187, the Food and Drug Administration Safety and Innovation Act. This legislation included a section called the Synthetic Drug Abuse Prevention Act of 2012. The Synthetic Drug Abuse Prevention Act of 2012 immediately placed 26 synthetic drugs in Schedule I of the Controlled Substances Act, including Mephedrone and MDPV. On April 13, 2013, Methylone, including its salts, isomers, and salts of isomers, was permanently placed into Schedule I of the Controlled Substances Act (CSA).

6. As a result of my involvement in this investigation with other law enforcement officers, I am familiar with the information set forth in this Affidavit. I have consulted with other law enforcement officers regarding this investigation, and as a result, when I refer to what a Postal Inspector or another Special Agent has observed or heard, I am doing so based upon my discussion with that individual, or by reading his or her reports.

## PURPOSE OF AFFIDAVIT

7. This affidavit is being submitted in support of a criminal complaint charging **MICHAEL CENTANNI** with a violation of Title 21, United States Code, Sections 841(a) and 846 (attempt and conspiracy to possess with the intent to distribute methylone, a Schedule I controlled substance). Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant has violated federal narcotics laws under Title 21.

## BACKGROUND AND PROBABLE CAUSE

8. On November 25, 2013 United States Postal Inspector Styers encountered an EMS international mail parcel bearing tracking number EE980407696CN addressed to "Michael Centanni, 36 Del Rio Ln, Rochester, NY 14622". The declared weight of the package was 1.1 kilograms and was said to contain "Glass Fibers" with a declared value of $30.00. The

package was unopened and there was no evidence of tampering. An extended border search of the international mail parcel was conducted by USPS and your affiant. Inside the package, your affiant located a crystal like substance that field tested positive for 3,4 methylenedioxymethamphetamine, (aka "MDMA" or "ecstacy", a Schedule I controlled substance). I am aware, based upon multiple investigations and seizures involving methylone, that methylone will field test positive for MDMA because both chemicals have a similar chemical structure. Either is illegal as a Schedule I controlled substance. The weight of the substance was approximately 1,047 grams.

9. A crystalline form of MDMA and methylone sold on the streets is often referred to "Molly." A typical dosage of "Molly" is between .2 and .4 grams. Therefore based on the amount of the crystalline substance being delivered, as well as my training and experience and the experience of other agents assigned to this investigation, I believe that this quantity of "Molly" (one kilogram) is consistent with drug trafficking, and is not consistent with personal use.

## CONTROLLED DELIVERY OF PACKAGE TO TARGET RESIDENCE

10. On November 26, 2013, law enforcement agents executed a controlled delivery of the international mail package described above to Michael Centanni at his residence located at 36 Del Rio Lane, Rochester, New York. Prior to attempting the controlled delivery of the subject parcel, law enforcement officers replaced the 1,047 grams of MDMA with "sham" MDMA. "Sham" refers to a substance which is utilized to mimic the size, shape and weight of

a controlled substance, but which contains no actual controlled substance. Additionally, pursuant to a court order authorized by the Hon. Jonathan W. Feldman, agents placed an electronic transmitting device within the subject parcel. The transmitter emits a high-frequency signal every five seconds inside the Subject Parcel. However, when the subject parcel is opened, the transmitter emits a high-frequency signal every two seconds. The electronic signal from the transmitter was monitored by law enforcement over a radio frequency.

11.   At approximately 1:49 p.m., a postal carrier, acting in an undercover capacity, delivered the international mail parcel to 36 Del Rio Lane, Rochester, New York. The package was delivered to and accepted by the defendant, Michael Centanni. The parcel was then taken inside the residence. Shortly thereafter, agents monitoring the transmitter received a high frequency signal every two seconds, indicating that the Subject Parcel had been opened. Shortly thereafter, agents and officers executed a court authorized "knock and announce" entry of the premises pursuant to a federal search warrant authorized by the Honorable Jonathan W. Feldman. The front door was opened by the defendant's mother, who was advised that officers had a warrant.

12.   Upon securing the residence, Michael Centanni was located in a hallway. Agents located the mail parcel inside his bedroom, ripped open. The sham was missing from the box.

The defendant was transported to the federal building where he was processed and fingerprinted by your affiant and DEA SA James Schmitz. At approximately 2:43 p.m., I read the defendant his so-called Miranda rights. The defendant indicated that he understood his rights and was agreeable to speaking with agents. The defendant admitted to the following relevant facts: that he was expecting a package in the mail; that he had gone to the post office and was tracking the package on-line; that he expected to receive one kilogram of methylone; that a prior shipment of methylone had been seized by law enforcement; that he paid for the methylone by using Bitcoins (a peer-to-peer digital currency) and explained how he made payment; that he spent a total of $3,250 in US currency to purchase the required BitCoins (including all processing charges) to purchase the kilogram of methylone; that had he received the package, that he could sell it in two days and that he could typically make $15,000; that he normally sells the methylone in "quarter pound" quantities (4 ounces); that he flushed the "sham" down the toilet as law enforcement was at the door with a search warrant.

WHEREFORE, based on the foregoing, your affiant submits there is probable cause to believe that the defendant, Michael Centanni, has violated Title 21, United States Code, Section §§ 841 and 846, to wit, conspiracy to possess with the intent to distribute methylone, a Schedule I controlled substance.

Jason Siuda
Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this 26th
day of November 2013.

_____
HON. JONATHAN W. FELDMAN
United States Magistrate Judge
Western District of New York